■ In the Matter of BRYCE Q., a Neglected Child. FRANKLIN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; BRANDY R., Appellant. [59 NYS3d 170]—

Devine, J. Appeal from an order of the Family Court of Franklin County (Main Jr., J.), entered March 23, 2016, which, in a proceeding pursuant to Family Ct Act article 10, denied respondent's motion to delay a prior sentence of incarceration.

Respondent's child was adjudicated to be neglected and, in February 2014, Family Court issued a dispositional order that placed respondent under the supervision of petitioner. The terms of supervision required respondent to comply with various terms and conditions that included refraining from consuming alcohol, marihuana and other illegal or unprescribed substances, as well as meaningfully participating in and completing recommended mental health services.

Petitioner commenced this proceeding three months later, alleging that respondent had willfully violated the dispositional order by consuming forbidden substances and missing appointments with her therapist. Respondent appeared before Family Court and admitted to willfully violating the dispositional order, resulting in an August 2014 consent order in which she was sentenced to 90 days in jail and directed to report to the jail by a specified date. Family Court made clear that it would consider delaying the report date if respondent complied with the terms and conditions of her supervision going forward.

A series of modified orders of commitment followed that adjourned the report date but, as 2015 dawned, respondent tested positive for various substances and was held on a probation violation petition. Respondent was eventually found to have violated her probation and sentenced to a term of imprisonment, prompting Family Court to issue an order in July 2015 directing that she begin serving the jail sentence "immediately upon her release from [state prison] unless" other relief was sought by motion. Respondent moved for a further delay in the report date as her release from prison loomed, with her attorney representing that respondent had made productive use of her time in prison by completing an alcohol and substance abuse treatment program and obtaining her high school equivalency diploma. Following an appearance on the motion, Family Court issued an order in March 2016 deeming the jail sentence satisfied upon receipt of proof that respondent had completed the treatment program and obtained her diploma, as well as a copy of the terms of her parole supervision. Respondent failed to provide the demanded proof, and instead appeals from that order.*

Respondent did not appeal from any order save that entered in March 2016, an order that did nothing beyond deeming a previously imposed jail sentence to be satisfied if certain documentation was provided, and her contentions "relating to th[e] prior orders are not properly before us" (*Matter of Isaiah*

---

* Respondent moved for a stay pending the outcome of her appeal, which this Court granted.

*M. [Nicole M.]*, 144 AD3d 1450, 1452 [2016], *lv dismissed* 28 NY3d 1129 [2017]; *see Matter of Bonneau v Bonneau*, 97 AD3d 917, 918 [2012], *lv denied* 19 NY3d 815 [2012]). As for the March 2016 order itself, respondent did not provide Family Court with the required proof of her high school equivalency diploma and, notably, fails to represent on appeal that she actually obtained one. In light of respondent's numerous wasted opportunities to come into compliance with the supervision imposed by the dispositional order, as well as her inability to document her touted progress, we perceive the March 2016 order to be "eminently fair and reasonable" (*Matter of Duquette v Ducatte*, 102 AD2d 904, 904 [1984]).

McCarthy, J.P., Rose and Mulvey, JJ., concur.

Clark, J. (dissenting). Because Family Court did not obtain respondent's consent to the conditions imposed upon her in the March 2016 order, and because Family Court's practice of suspending sentences creates a multitude of issues, I respectfully dissent.

Pursuant to an April 2014 order of fact-finding and disposition, respondent was placed under the supervision of petitioner until February 21, 2015. Respondent was also subject to an order of protection directing her to refrain from certain acts and observe certain conditions until February 21, 2015, when such order expired.[1] On June 13, 2014, respondent admitted to a willful violation of the order of protection. She consented to a 90-day jail sentence with the understanding that Family Court would delay her sentence and conduct a compliance conference in advance of her report date. If she was "in compliance" at the time of the conference, which was scheduled for September 26, 2014, the court would further delay her sentence. Neither the parties nor the court placed anything on the record indicating what "compliance" entailed or how long respondent would have to be in compliance before the court would agree to terminate the 90-day sentence (*see Matter of Amara AA. [Ashley AA.]*, 152 AD3d 845, 846 [2017, Lynch, J., concurring]). Nor did such information appear in Family Court's August 15, 2014 order entered thereon.

Respondent was thereafter arrested at least twice and incarcerated at the Warren County Jail. On September 25,

---

**1.** While the order of fact-finding and disposition and the order of protection were not included in the record on appeal, they were included in respondent's motion for a stay pending appeal. As such, we may take judicial notice of those orders (*see Musick v 330 Wythe Ave. Assoc., LLC*, 41 AD3d 675, 676 [2007]; *People v Comfort*, 278 AD2d 872, 873 [2000]; *Casson v Casson*, 107 AD2d 342, 344 [1985], *appeal dismissed* 65 NY2d 637 [1985]).

2014, the day before the scheduled compliance conference, Family Court issued a modified order of commitment delaying respondent's reporting date to December 22, 2014 and scheduling another compliance conference for the same day. In a December 2014 compliance report, petitioner indicated that respondent had been incarcerated in the Warren County Jail since August 7, 2014. On December 16, 2014, Family Court further adjourned respondent's reporting date until April 13, 2015, with another compliance conference scheduled for that same date. On February 6, 2015, respondent was released from the Warren County Jail. From August 7, 2014 until February 6, 2015, Family Court could have imposed the 90-day jail sentence, as respondent was incarcerated on other charges. Instead, the court chose—at petitioner's request—to adjourn respondent's reporting date and continue to hold the 90-day jail sentence over respondent. Thereafter, petitioner sought an extension of the orders of supervision and protection, and Family Court extended those orders until February 21, 2016. At all applicable times, respondent's child was safely in the custody of his father.

On March 6, 2015, one month after her release from the Warren County Jail, respondent was arrested and incarcerated for a violation of probation and was ultimately sentenced to a state prison term. On April 3, 2015, Family Court issued a third modified order of commitment adjourning respondent's reporting date until July 17, 2015. In a July 2015 compliance report, petitioner requested further adjournment of respondent's reporting date, stating that, while incarcerated, respondent had enrolled in general equivalency diploma classes and applied to the shock incarceration program, as well as three parenting classes. However, despite petitioner's request and representations regarding respondent's compliance efforts while in state prison,[2] Family Court, by a July 15, 2015 order, "cancelled" the upcoming compliance conference and directed that respondent "surrender to the Franklin County Jail immediately upon her release from [the Department of Corrections and Community Supervision] unless the [c]ourt, on motion of any party, seeks other relief in advance of said release."

In February 2016, because "[t]he safety and well-being of [respondent's child could] be sufficiently ensured by his custodial placement with his father," petitioner notified Family Court that it would not be seeking an extension of the orders of

---

**2.** Again, the August 2014 order failed to define the conditions with which respondent was expected to comply and, therefore, respondent was without guidance as to what exactly "compliance" entailed.

supervision or protection. Those orders subsequently expired on February 21, 2016. On March 2, 2016, respondent moved, by order to show cause, to delay her reporting to the Franklin County Jail on the basis that she was being released from the shock incarceration program on March 3, 2016. In support of her motion, respondent submitted a letter signed by an offender rehabilitation coordinator at the Lakeview Shock Incarceration Program, stating that respondent had graduated from the six-month program and, in doing so, had completed, among other things, 600 hours of alcohol and substance abuse treatment lectures and workshops.

At a March 4, 2016 appearance on respondent's order to show cause, at which all of the parties were present, respondent sought termination of the previously imposed 90-day jail sentence. Petitioner did not take a position and deferred to Family Court. Significantly, the attorney for the child stated that she "would [not] object to the sentence being terminated." In a bench decision, Family Court held that it would deem the "sanctions satisfied" if respondent had "successfully completed the intense [alcohol and substance abuse treatment] program" and submitted a copy of the terms and conditions of her post-release supervision and proof that she had obtained her high school equivalency diploma. Despite respondent's presence in Family Court, the record does not reflect that, at any time, Family Court sought respondent's consent to the imposition of these new conditions. In fact, there is no colloquy at all between the court and respondent. On March 23, 2016, Family Court entered an order reflecting its bench decision, and it is from this order that respondent appeals.

In my view, the conditions imposed upon respondent in Family Court's March 2016 order were improper. At that time, the orders of supervision and protection had expired and the court therefore lacked the authority to impose new conditions upon respondent (see generally Family Ct Act § 1072). Such conditions were not agreed to by respondent at the time that she admitted to a willful violation of the order of protection in June 2014 or included in the resulting August 2014 order. As a result, respondent had no notice that she would be expected to, among other things, obtain her high school equivalency diploma before the court would deem the 90-day jail sentence satisfied. Accordingly, respondent cannot now be expected to comply with conditions of which she did not have adequate prior notice, and such conditions should be struck from the March 2016 order (compare Matter of Isaiah M. [Nicole M.], 144 AD3d 1450, 1453 [2016], lv dismissed 28 NY3d 1129 [2017]).

Because Family Court lacked the authority to impose additional conditions in March 2016, it had only two permissible options at the time that it was presented with respondent's order to show cause—grant the relief requested and terminate the 90-day jail sentence or deny the relief requested and adhere to the July 2015 order directing respondent to surrender to the Franklin County Jail upon her release from state prison. Family Court's failure to define the conditions with which respondent was expected to comply renders it difficult to assess whether termination of the 90-day jail sentence would have been appropriate. In the absence of such expressly defined compliance conditions, one could reasonably assume that respondent was expected to comply with the conditions set forth in the orders of supervision and protection.[3] Operating under such assumption, it seems to me that it would have been fair and equitable for Family Court to have deemed the 90-day jail sentence satisfied based upon respondent's successful completion of the shock incarceration program, her incarceration for roughly 17½ of the 20 months that had passed since entry of the August 2014 order of commitment[4] and petitioner's determination not to seek an extension of the orders of protection and supervision because respondent's child was safely in the custody of his father. Indeed, the paramount purpose of Family Ct Act article 10 proceedings is to "protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" (Family Ct Act § 1011; *see Matter of Charles DD.*, 163 AD2d 744, 747 [1990]), not to punish a parent for his or her behavior (*see Matter of Ulster County Dept. of Social Servs. v Clarence A.*, 152 Misc 2d 945, 947 [Fam Ct, Ulster County 1991, Peters, J.]).

Furthermore, good cause does not exist, in my view, to support the denial of respondent's order to show cause and adherence to the July 2015 order directing respondent to report to the Franklin County Jail upon release from state prison, as that order suffers from several underlying issues. Initially, as previously discussed, respondent did not have adequate notice or explanation of her compliance obligations under the August 2014 order (*compare Matter of Isaiah M. [Nicole M.]*, 144 AD3d at 1453 [noting that the respondent was expressly advised of

---

**3.** Neither of these orders included a requirement that respondent obtain her high school equivalency diploma.

**4.** Even in the suspended judgment context of a termination of a parental rights case, "[t]he maximum duration of any term or condition of a suspended judgment is one year," unless Family Court determines after a hearing that exceptional circumstances require a one-year extension (Family Ct Act § 1053 [b]).

the requirement to report for daily urine screens]). The delayed reporting practice utilized by Family Court is not expressly authorized by the Family Ct Act[5] and, thus, there is no statutory provision requiring that the compliance terms and conditions be expressly defined. However, it is a fundamental tenet of due process that an individual must have adequate notice of the conditions with which he or she must comply to avoid a term of incarceration (*see People v Costanza*, 281 AD2d 120, 125 [2001], *lv denied* 96 NY2d 827 [2001]; *see generally Matter of Wong v Coughlin*, 138 AD2d 899, 900 [1988]; *see also People v Parker*, 271 AD2d 63, 68-70 [2000] [sentencing conditions did not satisfy due process requirements because they did not give the defendants adequate notice of the conduct that would result in enhanced sentences], *lv denied* 95 NY2d 967 [2000]). Moreover, the governing statutory provisions in analogous contexts require that, where an individual must comply with certain conditions to avoid a particular result, such conditions must be expressly defined. For example, where Family Court directs a suspended judgment following a finding of permanent neglect, Family Ct Act § 1053 (a) states that "[r]ules of court shall define permissible terms and conditions of [the] suspended judgment" and that those "terms and conditions shall relate to the acts or omissions of the parent." In addition, in criminal drug court, eligible individuals must agree to and sign contracts outlining the terms and conditions with which they are expected to comply (*see* CPL 216.05 [5]).

Furthermore, in its July 2015 compliance report, petitioner requested an adjournment of respondent's reporting date and advised Family Court that, among other things, respondent had applied for the shock incarceration program and was on the waiting list for three parenting classes. Despite petitioner's adjournment request and updates regarding respondent's compliance efforts, Family Court sua sponte "cancelled" the compliance conference date and directed respondent to surrender to the Franklin County Jail immediately upon her release from state prison. The court did so without affording respondent an opportunity to be heard on the matter (*compare Matter of Isaiah M. [Nicole M.]*, 144 AD3d at 1454).

Accordingly, even if the improper conditions were struck from

---

**5.** Overall, the delayed reporting practice appears problematic. It presents respondents with a "catch-22" situation in which they must agree to the delayed reporting structure or be subject to an immediate sentence. In instances where the respondent agrees to the delayed reporting arrangement, he or she may not be able to appeal from subsequent orders further adjourning the reporting date (*see Matter of Amara AA. [Ashley AA.]*, 152 AD3d at 846 [2017]).

the March 2016 order, I would not find good cause to support the denial of respondent's order to show cause and adherence to Family Court's July 2015 order imposing the previously suspended sentence. Rather, given respondent's successful completion of the shock incarceration program, the lengthy period of time that passed since the initial commitment order and the fact that petitioner allowed the orders of supervision and protection to expire without seeking an extension, I find good cause to grant respondent's request to terminate the 90-day order. As such, I would reverse the order and grant respondent's order to show cause.

Ordered that the order is affirmed, without costs.